IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

    Plaintiff,

v.

$30,790 IN UNITED STATES CURRENCY,

    Defendant.

NO. C05-3646 TEH

<u>ORDER DENYING CLAIMANT VERDUGO'S MOTION FOR RELIEF FROM DEFAULT AND GRANTING PLAINTIFF'S MOTION FOR A DEFAULT JUDGMENT</u>

       This matter comes before the Court on Claimant Rosa Verdugo's motion for relief from default and Plaintiff United States of America's motion for a default judgment. This is a judicial forfeiture action involving the seizure of $30,790 in U.S. currency on March 14, 2005, from a safe deposit box rented to Rosa Verdugo ("Verdugo"). The United States ("U.S.") filed a complaint for forfeiture of the $30,790 on September 9, 2005, alleging that the forfeiture of the money is authorized by 21 U.S.C. § 881(a)(6), because the money was "furnished or intended to be furnished . . . in exchange for a controlled substance" or "was proceeds traceable to such an exchange." Compl. at ¶ 27; Req. of U.S. to the Clerk to Enter a Default at 1:23-27. Verdugo received a copy of the complaint on September 14, 2005, via certified mail (the U.S. received a return receipt signed "Rosa Verdugo", dated "9-14-05"), but she failed to file a claim within the next 30 days as required by Rule C(6)(a)(i) of the Supplemental Rules for Certain Admiralty and Maritime Claims.[1] On November 29, 2005, the U.S. filed its request for the Clerk to enter default. Verdugo took no

---

[1] "Judicial forfeitures of property are governed by the Supplemental Rules for Certain Admiralty and Maritime Claims . . . ." *United States v. Lido Motel, 5145 N. Golden State Blvd.*, 135 F.3d 1312, 1315 (9th Cir. 1998).

action after receiving notice of the request to enter default, and the Clerk entered default on December 6, 2005.

On December 9, 2005, three days after the Clerk entered default, Verdugo through counsel, Eileen Burke ("Burke"), filed a motion for relief from default alleging that Verdugo had attempted to retain counsel but had been unable to afford a retainer. Verdugo also asserted that the seized money was lawfully obtained through three years of wages and tips and represented her entire savings. Verdugo concurrently filed a proposed claim and answer. The U.S. answered on January 3, 2006, with its opposition to the motion for relief from default and its own motion for a default judgment. Verdugo filed a late opposition to the motion for a default judgment on February 13, 2006. The Court heard oral arguments on the two motions, which go hand in hand, on March 6, 2006.

Having carefully considered the parties' papers and oral arguments, the Court DENIES Claimant's motion for relief from default and GRANTS Plaintiff's motion for a default judgment for the reasons set forth below.

## I. LEGAL STANDARD

Federal Rule of Civil Procedure 55(c) provides that a court may set aside a default for "good cause shown." "The 'good cause' standard that governs vacating an entry of default under Rule 55(c) is the same standard that governs vacating a default judgment under Rule 60(b)." *Franchise Holding II, LLC, v. Huntington Restaurants Group, LLC*, 375 F.3d 922, 925 (9th Cir. 2004).

In the Ninth Circuit, the good cause analysis considers three factors: (1) whether the claimant engaged in culpable conduct that led to the default; (2) whether the claimant does not have a meritorious defense; and (3) whether reopening the default will prejudice the plaintiff. *Id*. at 925-26. The claimant bears the burden of showing that these factors favor setting aside the default. *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001). Because the claimant must establish all three factors, a court may deny a motion to set aside a default "if any of the three factors [is] true." *Franchise Holding II,* 375 F.3d at

2

1 926 (quoting *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000)). This is in tension with the policy that defaults and default judgments are disfavored because "a case should, whenever possible, be decided on the merits." *TCI*, 244 F.3d at 696 (quoting *Falk v. Allen*, 739 F.3d 461, 463 (9th Cir. 1984)).

## II. DISCUSSION

The Court addresses each of the three prongs of the "good cause" analysis in turn below.

### A. Culpable conduct prong

There is a split of authority in the Ninth Circuit as to the culpable conduct prong of the "good cause" analysis. The parties are in disagreement as to which line of cases controls. However, because the Court finds that Verdugo's conduct is culpable under either line of authority, the Court does not resolve the conflict between the competing lines of cases.

Under one line of Ninth Circuit cases relied on by the U.S., a party's conduct is culpable if he "received actual or constructive notice of the filing of the action and failed to answer." *Franchise Holding II*, 375 F.3d at 926 (quoting *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 690 (9th Cir. 1988)). Under this authority, the rule is straightforward: when a party has actual notice of the filing of a complaint and fails to answer, the party's conduct is culpable, and it is within the district court's discretion to deny the motion to set aside the default. *Id.*

Verdugo does not contest that she had actual notice of the complaint. *See* Verdugo's Memorandum of Points and Authorities ("M.P.A.") in Supp. of Mot. for Relief from Default at 3:9-10, 3:17-18 (explaining that Verdugo received and gave counsel a copy of the complaint). The U.S. has submitted a copy of the return receipt for the complaint signed by "Rosa Verdugo" and dated "9-14-05." *See* Ex. D to Kenney's Decl. in Supp. of U.S.'s Opp'n to Mot. of Verdugo. In addition, Verdugo also does not contest that she failed to file a claim in the time required by the Supplemental Rules. Thus, based on Verdugo's actual

3

notice of the complaint and failure to file a claim, Verdugo has not met her burden of establishing a lack of culpable conduct. This Court therefore has discretion to deny the motion to set aside the default under the *Franchise Holding II* line of cases relied on by the U.S.

However, this does not end the Court's analysis. Under another line of Ninth Circuit cases relied on by Verdugo, a party's "'conduct is culpable if he has received actual or constructive notice of the filing of the action and *intentionally* failed to answer.'" *TCI*, 244 F.3d at 697 (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)). "Intentionally," in the default and default judgment context, generally requires a showing that a defendant's conduct demonstrated a "devious, deliberate, willful, or bad faith failure to respond." *Id*. at 698. In contrast, where there is a "neglectful failure to answer" and the party "offers a credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process," the failure to respond is not "*necessarily* . . . culpable or inexcusable." *Id*. at 697-98.

When considering the intentionality component, a "defaulting party's general familiarity with legal processes or consultation with lawyers at the time of default [are] pertinent to the determination [of] whether the party's conduct in failing to respond to legal process was deliberate, willful, or in bad faith." *Id*. at 699 n.6; *see, e.g., Alan Neuman Prods., Inc.*, 862 F.2d at 1392 (district court did not abuse its discretion in refusing to set aside the default because the defaulting party intentionally failed to answer based on his actual notice of the complaint and retention of attorneys who "monitored the court docket"); *Direct Mail Specialists, Inc.*, 840 F.2d at 690 (district court did not abuse its discretion in refusing to vacate a default judgment because the party who had actual notice of the complaint was a lawyer and "presumably was well aware of the dangers of ignoring service of process").

Verdugo contends that her conduct is not culpable because of her inability to retain counsel and her lack of sophistication. After Verdugo received a copy of the complaint, she

4

claims that she was unable to retain counsel until after the default had been entered. *See* Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 3:9-17, 4:1-3 (explaining that Verdugo contacted several attorneys but could not secure counsel because she could not afford a retainer and that Burke's "schedule could not accommodate" Verdugo's case until after the Clerk entered default). Verdugo also asserts that she "has not completed high school and works as an exotic dancer . . . [and] has no legal experience." *Id*. at 5:18-19.

The government contends, however, that Verdugo has not met her burden of negating culpable conduct because she "did not submit any declaration, affidavit or other evidence as to why she failed to file a claim by the October 14, 2005 deadline for filing a claim." U.S.'s Second Reply at 3:16-18. Only her attorney, Burke, has included a declaration claiming that Verdugo "was unable to retain counsel because she did not have any money for a retainer because the money seized in this case constituted all of her savings." Burke's Decl. in Supp. of Mot. for Relief from Default at 2:4-7. But, according to the U.S., these assertions by Burke "are based on 'information and belief' which is inadmissible." U.S.'s Second Reply at 3 n.3. The Court need not decide this dispute because, as discussed below, the Court finds that Verdugo has failed to meet her burden even if the statements in Burke's declaration are assumed to be true.[2]

In particular, even if Verdugo was unable to retain counsel and is not a sophisticated party, the Court simply cannot ignore that Burke, an attorney (and criminal defense attorney for Verdugo's boyfriend), advised and assisted Verdugo months before the U.S. filed its forfeiture complaint. Burke was involved in the process since at least May 2005, when she assisted Verdugo in preparing a motion for return of property in state court. Burke's Decl. in

---

[2] In addition, even accepting Burke's declaration as evidence, the Court finds it not credible that Verdugo could not retain counsel because she could not afford a retainer. Assuming Verdugo's contention is true that she received the $30,790 through three years of wages and tips and that this was her "entire savings," then it is questionable that she could not afford an attorney. Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 3:13. On average, $30,790 equates to approximately $855 per month in savings. Verdugo had notice of the complaint on September 14, 2005. Assuming that she was still working at this time, and that she was accumulating wages and tips regularly, she would have earned $855 from mid-September to mid-October. It is not unreasonable to believe that an attorney would accept this amount as a retainer.

5

Supp. of Mot. for Relief from Default at 2:13-16.  In June 2005, Burke helped Verdugo to prepare an administrative claim for the money with the Drug Enforcement Administration ("D.E.A.").[3]  Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 2:10-15.  The U.S. correctly points out that Verdugo (through Burke) was able to file this claim in a timely fashion, indicating that she is capable of filing a claim within the time limits.  After the case was referred to the U.S. Attorney's Office, Burke contacted the office on July 11, 2005, and again on August 8, 2005, to inquire about Verdugo's claim and was informed that the U.S. had until September 9, 2005, to decide whether to file a complaint.  *Id*. at 2:20-21.  After Verdugo received the complaint, Burke remained "in contact" with Verdugo.  *Id*. at 4:1-2.  In late October 2005, Verdugo contacted Burke and gave counsel a copy of the complaint.[4]  *Id*. at 3:16-18.  Burke told Verdugo that she would find out from the U.S. Attorney's Office about the action.  *Id*. at 3:18-19.  Burke, "as a courtesy" to Verdugo, called the U.S. Attorney's Office and inquired whether Verdugo could have more time to file a claim and answer.  *Id*. at 3:20-21.  There is no dispute that Patricia Kenney ("Kenney"), the Assistant U.S. Attorney, informed Burke at that time that Verdugo should file a motion to allow for a late filing.  Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 3:24-26.

The U.S. contends that this was not just a courtesy call, and that Burke told counsel in the U.S. Attorney's Office that she "*had agreed to represent Ms. Verdugo* and asked for an extension of time to file a claim and answer."  Kenney's Decl. in Supp. of U.S.'s Opp'n to Mot. of Verdugo at 2:25-26 (emphasis added).  In other words, the U.S. contends that Burke was Verdugo's attorney at least by late October 2005.  Burke claims, however, that it was not until after November 29, 2005, that Burke accepted Verdugo as a client "because Counsel's

---

[3] On May 13, 2005, Verdugo received notice from the D.E.A. that the money seized from Verdugo's safe deposit box was subject to forfeiture.  Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 2:8-10.

[4] The U.S. asserts that Burke received a courtesy copy of the complaint shortly after September 9, 2005, "because Ms. Burke had inquired about the status of defendant $30,790 on behalf of Ms. Verdugo."  U.S.'s Opp'n to Mot. to Vacate Default at 2:10-12.  It is unclear whether Burke disputes that she received a courtesy copy of the complaint from the U.S.  Thus, the Court will not rely on this fact in making its determination of whether Verdugo has met her burden of negating culpable conduct.

6

schedule could not accommodate Ms. Verdugo's case." Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 4:2-3.  Regardless if Burke was Verdugo's attorney (i.e. her attorney in fact) in late October 2005, there is still no explanation why Burke, who was clearly aware of the filing deadline, failed to assist Verdugo in filing a simple and straightforward claim or ask this Court for an extension of time or, at a minimum, assure that Verdugo understood her dilemma. *See* Verdugo's Proposed Claim (a simple one-page document in which Verdugo declares under penalty of perjury that she is "the lawful owner of the property seized").  The U.S. did not ask for default to be entered until November 29, 2005, and Burke and Verdugo had sufficient time from late October to late November to file a claim or ask this Court for more time.  The Court simply does not find it credible that Burke had no time to help Verdugo file a claim prior to the entry of default.

Because a defaulting party's "consultation with lawyers at the time of default [is] pertinent to the determination [of] whether the party's conduct in failing to respond to legal process was deliberate, willful, or in bad faith," the Court finds that Verdugo has failed to meet her burden of showing a lack of culpable conduct. *TCI*, 244 F.3d at 699 n.6.  Even accepting Burke's claim that Verdugo was not her client until after November 29, 2005, Burke was closely involved in the process as early as May 2005 and assisted and advised Verdugo up to the entry of default.  More importantly, the facts show that Burke selectively meted out her time to Verdugo.  For example, as discussed above, Burke had time to file an administrative claim in June 2005, but no time to file a similar claim during the two-and-a-half months between service of the complaint and the U.S.'s request for entry of default. Burke even stated, at oral argument, that she "helped [Verdugo] along the way significantly." Since counsel was involved in the process but failed to do anything to meet the filing deadline, this Court has discretion to deny the motion to set aside default under the *TCI* line of cases relied on by Verdugo: "Absent some explanation . . . , it is fair to expect that individuals who . . . have consulted with a lawyer appreciate the consequences of failing to answer and do so only if they see some advantage to themselves." *Id*.  In other words, where a lawyer has been involved in the process -- especially to the extent shown here -- and there

7

is no credible, good faith explanation as to why she failed to file a claim, it is appropriate to conclude that failure to respond was culpable.

The facts of this case are distinguishable from *TCI* and the cases cited therein, in which culpable conduct was not found. Contrary to Verdugo's assertion, *TCI* does not assist Verdugo in showing that her conduct was not culpable. *TCI* involved an intra-family dispute between the wife of a deceased and her mother-in-law over the proceeds of a life insurance policy in an interpleader action. *Id*. at 693. There was no dispute that the wife had notice of the cross-claim brought by the mother-in-law and failed to respond during the time required by local rules. *Id*. at 694. But, the court determined that the wife's conduct was not culpable "because of her exigent personal circumstances, especially her mental state, and because of her lack of familiarity with legal matters." *Id*. at 699. She "had been widowed less than a year before [the mother-in-law's] action against her, and was distraught. She was in a psychiatrist's care for her severe depression, and was taking several strong psychoactive medications." *Id*. During the time the wife had to answer the cross-claim, she "was in the process of selling her home and moving herself and her two small children from California to Florida." *Id*. Her "extreme personal difficulty" satisfied the court that the wife's conduct was excusable. *Id*. In addition, there is no evidence that the wife had contacted counsel prior to the entry of default in favor of her mother-in-law. *See id*. at 694-95 (showing that the wife told the mother-in-law's counsel that "she had not retained counsel and did not know what she was going to do about the litigation" and explaining that the wife contacted a lawyer in Florida for advice after she had failed to respond to the motion to enter a default judgment). In contrast, while Verdugo may also lack legal sophistication, nothing in the record before this Court demonstrates "extreme personal difficulty" of the nature considered by the court in *TCI*. And, as discussed above, Burke's close involvement in this case weakens Verdugo's argument that this Court should grant relief from default. Unlike the wife in *TCI*, Verdugo did have the assistance and advice of an attorney, but she nonetheless failed to take any steps to file a claim or seek more time.

8

Nor do the relevant cases cited in *TCI* support Verdugo's argument. *See id*. at 697-98 (citing cases where the court determined that the party's conduct was not culpable).[5] First, this case is distinguishable from *Bateman v. United States Postal Service*, 231 F.3d 1220 (9th Cir. 2000), in which an attorney "left the country for a family emergency, miss[ed] the deadline to answer a motion for summary judgment while he was away, and did not contact the district court or the opposing counsel until 16 days after his return because it took that long for him to recover from his trip and sort through his mail." *TCI*, 244 F.3d at 698. While this did not preclude a finding of "excusable neglect" under Federal Rule of Civil Procedure 60(b), Burke has offered no similar explanation as to why she took no steps to assist Verdugo in filing a claim or asking this Court for an extension of time.[6]

Further, *Falk* does not support Verdugo's failure to respond. *Falk* involved an unlawful detainer action brought by a landlord against a tenant. *Falk*, 739 F.2d at 462. The tenant failed to appear at the hearing, and a default judgment was entered against her. *Id*. The court determined that the tenant's conduct was not culpable because she was preparing to leave the country the day after the hearing for medical treatment and did not return from Korea until two months after the judgment. *Id*. at 462, 464. "Moreover, *after* she learned about the [landlord's] judgment, she had difficulty finding counsel because the local legal aid office declined to assist her." *Id*. (emphasis added). Her failure to respond was not culpable because she failed to respond for "understandable reasons." *TCI*, 244 F.3d at 698. Here, Verdugo has offered no evidence of medical issues or being out of the country, nor did she

---

[5] The court in *TCI* discussed three cases regarding the lack of culpable conduct, two of which the Court finds relevant to the proceedings here. In the third case, *Gregorian v. Izvestia*, 871 F.2d 1515 (9th Cir. 1989), the Ninth Circuit determined that the defendants' failure to appear in the action was not culpable because the defendants had a reasonable belief that the court lacked subject matter jurisdiction over them. *Gregorian*, 871 F.2d at 1525. Because there is no similar allegation of this Court lacking jurisdiction to hear this case, the Court finds *Gregorian* outside the scope of its analysis.

[6] At oral argument, Burke explained that she has been in an ongoing trial before the San Francisco Police Commission since late August 2005. *See also* Burke's Decl. in Supp. of Resp. to Order to Show Cause at 2:34-7 (stating the same). This still does not explain how she had time to call the U.S. Attorney's Office, but no time to file a claim with this Court or ask for an extension of time, particularly since Burke acknowledged that she was not in trial every day.

9

fail to contact a lawyer until after default had been entered. Instead, Verdugo had the assistance and advice of a lawyer even before the U.S. filed its complaint for forfeiture.

Accordingly, under either line of Ninth Circuit cases, Verdugo's conduct is culpable and this Court has discretion to allow the entry of default to stand. *See Franchise Holding II*, 375 F.3d at 926 (because the party seeking to set aside the default must show that all three factors of the "good cause" analysis favor setting aside the default, a district court may deny the motion if any of the three factors is true). Because Verdugo has failed to meet her burden in establishing a lack of culpable conduct, the Court finds it appropriate to deny the motion for relief from default.

B. <u>Other components of the "good cause" analysis</u>

Although the Court's findings on culpable conduct are a sufficient basis for denying the motion for relief from default, the Court considers the remaining prongs of the "good cause" analysis for purposes of creating a complete record.

1. <u>Meritorious defense prong</u>

"A defendant seeking to vacate a default judgment [or a default] *must present specific facts that would constitute a defense*." *TCI*, 244 F.3d at 700 (emphasis added). The burden on the party seeking to set aside a default "is not extraordinarily heavy." *Id*. Under this lenient standard, Verdugo satisfies her burden at this stage of the proceedings because she may be able to establish a meritorious defense.

Courts that have considered whether a party has a meritorious defense look to see whether the party has set forth specific facts to support its defenses or merely conclusory statements. *See, e.g., Franchise Holding II*, 375 F.3d at 926 (finding that the party seeking to set aside the default had failed to set forth specific facts that would constitute a defense because it had merely "offered the district court only conclusory statements that a dispute existed"); *Falk*, 739 F.2d at 462-63 (determining that a tenant who had failed to make timely rental payments had asserted specific facts that could support a defense of waiver to an

10

1   unlawful detainer action under the governing law because the landlord "repeatedly accepted
2   her late rental payments"); *Madsen v. Bumb*, 419 F.2d 4, 6 (9th Cir. 1969) (finding that the
3   trial court properly concluded that the defendant had failed to show a meritorious defense
4   because the defendant's "proposed Answer consists of a mere general denial without facts to
5   support it and is unverified").

Verdugo asserts that she has several affirmative defenses to the seizure of the money, including that the government cannot directly link the money to any illegal activity and that she is an innocent owner. Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 5:10-14; Verdugo's Proposed Answer at 4:23. In her proposed answer, she states that the money taken from the safe deposit box "belongs to her and she has filed an administrative claim for the money." Verdugo's Proposed Answer at ¶ 21. She also claims that she "has been employed in San Francisco for several years," apparently as an exotic dancer. *Id.* at ¶ 22; Verdugo's M.P.A. in Supp. of Mot. for Relief from Default at 5:19. In addition, she has attached as an exhibit to her motion for relief from default her administrative claim, dated June 10, 2005, in which Verdugo states under penalty of perjury that the money belongs to her and that she has obtained it through "a legitimate manner as a result of three years worth of wages and tips."[7] Ex. A to Verdugo's M.P.A. in Supp. of Mot. for Relief from Default.

Given these assertions, it appears that Verdugo may be able to establish that she is an innocent owner of the money seized from the safe deposit box under 18 U.S.C. § 983(d).[8] Accordingly, because Verdugo has put forth facts that support a meritorious defense and not

---

[7] According to the U.S., the California Employment Development Department has no record that Verdugo has been employed. U.S.'s Opp'n to Mot. to Vacate Default at 5:12-14. However, as this is a motion to set aside the default, this Court does not weigh the evidence, but looks to see whether the party seeking to set aside the default has put forward sufficient facts to warrant a meritorious defense.

[8] Section 983(d)(1) states that: "An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence." 18 U.S.C. § 983(d)(1). As to "a property interest in existence at the time the illegal conduct giving rise to the forfeiture took place," an "innocent owner" is someone who "did not know of the conduct giving rise to the forfeiture." 18 U.S.C. § 983(d)(2)(1).

11

1 just conclusory statements, she satisfies this prong of the "good cause" analysis, and the
2 Court will not deny the motion to set aside the default based on this factor.

### 2. Prejudice prong

"To be prejudicial, the setting aside of a judgment [or default] must result in greater harm than simply delaying resolution of the case. Rather, 'the standard is whether [plaintiff's] ability to pursue his claim will be hindered.'" *TCI*, 244 F.3d at 701 (quoting *Falk*, 739 F.2d at 463). The Ninth Circuit has determined that

> merely being forced to litigate on the merits cannot be considered prejudicial for purposes of lifting a default judgment [or default]. . . . A default judgment gives the plaintiff something of a windfall by sparing her from litigating the merits of her claim because of her opponent's failure to respond; vacating the default judgment merely restores the parties to an even footing in the litigation.

*Id*. In order to prejudice a party, the delay must generally result in either an evidentiary or financial loss. *Id*. (citing *Thompson v. American Home Assur. Co.*, 95 F.3d 429, 433-34 (6th Cir. 1996)).

Verdugo correctly points out that the U.S. has not asserted prejudice as a reason to deny the motion for relief from default. Merely being forced to litigate on the merits is not prejudicial as setting aside the default places the parties on an even footing. There are no assertions that the U.S. will have some evidentiary or financial loss by going forward with this litigation. Thus, the Court will not deny the motion for relief from default based on prejudice.

### III. CONCLUSION

Verdugo does not dispute that it is her burden to establish that the "good cause" factors favor setting aside the default. Because this Court finds that Verdugo has failed to meet her burden of establishing a lack of culpable conduct, Verdugo's motion for relief from default is DENIED. Although the Court acknowledges that a case should, whenever possible, be decided on the merits, the Court simply cannot condone Burke's actions in this case. Nor can the Court imagine that any court would endorse a policy which sets aside a

1  default under these facts, where a lawyer remained closely involved in the case by advising
2  and assisting a party but took no steps to file a timely claim before default was entered.  The
3  Court is not unsympathetic to Verdugo's allegation that she was unable to retain counsel, nor
4  to her lack of sophistication; however, neither of these factors excuses Burke's conduct up to
5  the entry of default.  Even accepting Burke's contention that she was not Verdugo's lawyer
6  until after default was entered, the Court is unable to ignore Burke's level of involvement
7  with Verdugo from at least May 2005, her awareness of the filing deadline, and her inaction
8  in filing a claim or asking for an extension of time -- both of which are relatively
9  straightforward and non-time-consuming acts.  Simply put, the Court cannot endorse a policy
10 that would allow this type of behavior on the part of an attorney to support setting aside entry
11 of default; to do so would be to obliterate a party's right to a default.  If, as Burke claims, she
12 is simply trying to help Verdugo regain her money, she should have taken the minimal steps
13 necessary to do that (i.e. file a claim), or at least sought an extension of time in which to do
14 so, before default was entered.

15       Finally, as Verdugo's counsel acknowledged at oral argument, entering a default
16 judgment would be appropriate if the Court declined to set aside the default.  Accordingly,
17 because the Court has denied Verdugo's motion to set aside the default, Plaintiff's motion for
18 a default judgment is GRANTED.  The Clerk shall enter a default judgment in favor of
19 Plaintiff and close the file.

21 **IT IS SO ORDERED.**

23 Dated:  04/05/06

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT